UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SUSAN BILKA,

        Plaintiff,

v.                                                   Case No. 11-C-0430

WARDEN CATHY J. FARREY, et. al.,

        Defendants.

**ORDER DENYING MOTION FOR RECONSIDERATION AND MOTION TO AMEND**

On May 10, 2011 this Court dismissed plaintiff Susan Bilka's lawsuit with prejudice because it failed to state a claim. Plaintiff has since filed a motion for reconsideration (Dkt. 5) and a motion to amend the complaint (Dkt. 6), both of which will be denied because plaintiff has no constitutionally protected right to visit a prisoner under the circumstances present here.

**1. Motion for Reconsideration**

A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665-66 (N.D. Ill. 1976), *aff'd* 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan,* 987 F. Supp.

1063, 1069 (N.D. Ill. 1997)). Such motions are disfavored and should be "rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990).

Plaintiff's motion for reconsideration contains no new evidence and points to no new controlling law. Instead plaintiff reiterates her earlier arguments and cites cases that were available at the time she filed her lawsuit. (Mot. for Recons., Dkt. 5 at 3-4.)

Both plaintiff's original complaint and her proposed amended complaint set forth the following facts: In 2004 plaintiff used her position as a prison employee to smuggle drugs, cellular phones, and other contraband to an inmate with whom she was having a relationship; once caught plaintiff resigned her position and pleaded to criminal charges; she received and completed a 45 day sentence; after completing her term of probation plaintiff made serval attempts to visit her inmate friend; Defendants prevented such visits by placing plaintiff on a state-wide restricted/suspended visitation list and by not processing her visitation applications; plaintiff submitted several visitation applications between 2007 and 2010; after still not being allowed to visit her friend plaintiff filed suit under 42 U.S.C. § 1983 alleging her Constitutional rights were violated by defendants' actions.

Based on these facts this Court dismissed plaintiff's original complaint because a non-prisoner such as plaintiff has no constitutionally protected right to visit an inmate whom she first met in prison and because plaintiff lacks standing to pursue such a claim. In her motion for reconsideration plaintiff argues that this court failed to recognize her right to visit a prisoner, erred with respect to her equal protection claim, and overlooked her claim that defendants failed to process her visitation paperwork. According to plaintiff, defendants could not have set forth a

2

"legitimate penological objective related to security for denying plaintiff visitation privileges" because they did not process her applications. (Mot. for Recons., Dkt. 5 at 4.)

Ultimately, however, all of plaintiffs arguments for reconsideration fail. She has no constitutional or state-created right to visit a prisoner, no standing to assert such a claim, and her equal protection claim is frivolous.

**A) Plaintiff Lacks Standing to Assert a Constitutional Violation**

It is the prisoner, not the would-be visitor, who has a limited right to inmate association. *See Mayo v. Lane,* 867 F.2d 374, 376 (7thCir. 1989) ("fundamentally, the person with the primary stake in the deprivations caused by imprisonment is the prisoner himself"). In *Mayo* the Seventh Circuit affirmed a district court's dismissal of a §1983 action because a non-prisoner seeking to visit an incarcerated relative had "no standing" to assert her claimed right to inmate association – in part because there was no evidence the plaintiff had actually attempted to visit her relative. *Id.* Here, while plaintiff did attempt to visit her incarcerated friend, she is not related to the inmate she seeks to visit. Nor is there any evidence that she knew the inmate before his incarceration. Rather plaintiff only knows the inmate through their unauthorized relationship, during which she abused her position as a prison employee by smuggling drugs and cell phones to the inmate. Based on the facts alleged in plaintiff's complaint, plaintiff lacks standing under § 1983. *See also Martin v. Snyder,* 329 F.3d 919, 921 (7th Cir 2003) (noting with approval a district court's conclusion that even prisoner's fiancee "has no independent right to visit" prisoner); *Spear v. Sowders,* 71 F.3d 626, 630 (6th Cir.1995) (*en banc*) ("[A] citizen simply does not have a right to unfettered visitation of a prisoner that rises to a constitutional dimension.") .

### B) Alleged Failure to Process Plaintiff's Visitation Application

Plaintiff's contention that defendants failed to process her applications for visitation privileges is essentially a due process claim – though plaintiff does not identify it as such. *See Tamas-Mercea v. Reno,* 222 F.3d 417, 427 (7th Cir. 2000) (holding that an illegal alien was not denied due process by Bureau of Immigration's failure to process his application). In order to state a claim under the Due Process Clause of the Fourteenth Amendment, it is first necessary to find a "protected" liberty or property interest. Liberty interests which are protected under the Fourteenth Amendment may arise from two sources: the Due Process Clause itself and state laws or regulations. *Hewitt v. Helms,* 459 U.S. 460, 466 (1983).

It is clear that the Due Process Clause itself does not give rise to a liberty interest in visitation privileges. The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, and therefore is not independently protected by the Due Process Clause itself. *Kentucky Department of Corrections v. Thompson,* 109 S.Ct. 1904, 1908 (1989).

State law, however, may also create enforceable liberty interests in the prison setting. *Thompson,* 109 S.Ct. at 1909. State law creates a protected liberty interest where it satisfies a two-pronged test: the statute or regulation must contain "explicitly mandatory language," and "specific substantive predicates" that limit officials' discretion relative to the protected activity. *Id.* at 1909-1010, citing *Hewitt,* 459 U.S. at 472.

Wisconsin statutes and regulations do not so provide. A person seeking to visit a prisoner has no liberty interest in visiting a prisoner who was unknown to the would-be visitor prior to incarceration. In the "interests of inmate security and proper rehabilitation, Wisconsin prison

officials are entitled to construe § DOC 309.12(2)(a) to mean that *only* persons who were known to the inmate prior to his incarceration may be allowed to visit the inmate." *Lomax v. Brekke,* 4 F.3d 997, *2 (7th Cir. 1993)(citing *Bell v. Wolfish,* 441 U.S. 520, 546-48 (1979)(emphasis added)). While § DOC 309.12(2)(a) has been superseded by § DOC 309.12(2), Wisconsin law still does not support a claim that plaintiff has a liberty interest in visiting a prisoner she did not know prior to his imprisonment. In fact, the current Department of Corrections regulation unambiguously states: "the warden or security director may suspend or revoke visiting privileges." DOC309.12(2). Because neither the Due Process Clause nor Wisconsin law create a liberty interest in visiting a prisoner unknown to the would-be visitor prior to incarceration, plaintiff was not entitled to due process before being denied visitation privileges. Her complaint, therefore, is unfounded.

### C) Self-Evident Basis for Denying Plaintiff Visitation Privileges

Even assuming a non-prisoner has some limited right to inmate association – and standing to assert such a right – plaintiff's own complaint demonstrates precisely why she has no equal protection claim. Plaintiff is not similarly situated to other would-be prison visitors. Unlike those typically seeking to visit an inmate, plaintiff previously smuggled drugs and other contraband to the very prisoner she now seeks to visit. And she did so while working as a prison employee. This Court need not wait for defendants to provide such a self-evident explanation where plaintiff has provided it herself in her own pleading. *See Hecker v. Deere & Co.,* 556 F.3d 575, 588 (7th Cir.2009) (noting that a plaintiff can plead himself out of court by pleading facts that shows he has no legal claim); *see also Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir.2008) (same). In fact this analysis comports with the reason given by the Wisconsin Department of Corrections for denying plaintiff visitation: "[V]istor is being denied as the warden has a reasonable ground to

5

believe that the proposed visitor has attempted to bring contraband into any penal facility or that the proposed visitor otherwise poses a threat to the safety and security of visitors, staff, offenders or the facility." (November 18, 2010 Notification from Department of Corrections to Susan Bilka, Attachment 30 to Proposed Amended Complaint.) As the Supreme Court has noted: "prohibiting visitation by former inmates bears a self-evident connection to the State's interest in maintaining prison security and preventing future crimes." *Overton v. Bazzetta,* 539 U.S. 126, 133 (2003). While plaintiff may not have been incarcerated in the same facility, she did serve 45 days in jail, and she did first meet the man she seeks to visit while she was working as a prison employee. Prohibition of such a visitor – especially in light of prior attempts to smuggle contraband into a prison – is plainly reasonable. *See Bell v. Wolfish,* 441 U.S. 520, 547 (1979) (noting that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.) Based on the facts alleged in her complaint, plaintiff fails to state a claim.

## 2. Motion to File Amended Complaint

Plaintiffs are generally allowed to amend their complaint "once as a matter of course." Fed.R.Civ.P. 15(a); *see Foster v. DeLuca*, 545 F.3d 582, 583–84 (7th Cir. 2008). But "'the right to amend as a matter of course is not absolute,' and a district court may deny a motion to amend 'if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss.'" *Foster,* 545 F.3d at 584 (quoting *Crestview Vill. Apartments v. U.S. Dep't of Housing & Urban Dev.,* 383 F.3d 552, 558 (7th Cir.2004)). Here, plaintiff seeks to amend her complaint in several respects, including: (1) adding three new equal protection claims against

Peter Ericksen (for placing plaintiff on a suspended visiting list and keeping plaintiff on the list for a year); (2) adding a new unconstitutional policy claim against William Pollard for enforcing Peter Ericksen's decision to place plaintiff on the list; (3) adding a new equal protection claim against defendants Delian and Waldron for refusing to process plaintiff's visitation application. (Dkt. 6. This court has reviewed and considered plaintiff's proposed amended complaint but concludes that, even if it were filed, it fails to cure the defects inherent in plaintiff's cause of action.

Plaintiff's equal protection claims fail as a matter of law. To state an equal protection claim, a § 1983 plaintiff must allege "that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Center, Inc. v. McAufliffe,* 37 F.3d 1216, 1220 (7th Cir. 1994), *cert. denied,* 116 S. Ct. 172 (1995); *Hornung v. Village of Park Forest,* 634 F. Supp. 540, 545 (N.D. Ill. 1986) (a plaintiff must allege he is a member of a protected class and that he was "subjected to discriminatory treatment because of his membership in such class"). Plaintiff has failed to alleged that she is a member of a protected class. Even if plaintiff is attempting to state a "class of one" equal protection claim, such a claim requires, among other things, a showing that she was treated differently than others similarly situated. *McDonald v. Vill. of Winnetka,* 371 F.3d 992, 1001 (7th Cir.2004). But plaintiff has not alleged that other *similarly situated* individuals were treated differently with regard to their visitation applications. Others applying for visitation privileges are not similarly situated unless, like plaintiff, they have a track record of smuggling contraband to the very prisoner they apply to visit. Plaintiff has not alleged that such individuals received different treatment. Finally, plaintiff's equal protection claims necessarily fail because the facts alleged in her proposed amended complaint support a compelling reason for state prison officials to prevent plaintiff from visiting: she

7

smuggled drugs and cellular phones to the prisoner she wants to visit while she was working as a prison employee. For these reasons plaintiff's equal protection claims fail.

Plaintiff's motion to file an amended complaint also attempts to add thirteen new attachments. (*Id.*) But plaintiff's own attachments demonstrate that her amendment would be futile. For example, Attachment #30 is a 2010 document, signed by defendant Waldron, that specifically explains why plaintiff's visitation application was denied – directly undermining plaintiff's claim that defendant Waldron refused to process her application. Attachment #16 also explains why plaintiff was removed from the visiting list (her original application used an old form with no questions related to her former status as a prison employee; administrators caught this error and removed plaintiff from the visiting list). Attachment 13e is a 2010 prison document stating that plaintiff:

> received a letter from Ms. Sebastian Program Director, dated 09/14/07, informing her that the removal of her name from inmate Burse's visiting list was approved for the following reasons: 'The warden has reasonable grounds to belive that you (1) have attempted to bring contraband into a penal facility, and (2) pose a threat to the safety and security of visitors, staff, inmates, or the institution.'

(Attachment 13e to Proposed Amended Complaint, Dkt 6.) A review of these documents leads to only one conclusion: between 2007 and 2010 prison officials informed plaintiff why she was not allowed to visit the prison. In light of these documents and for the reasons set forth above related to plaintiff's motion for reconsideration, this court concludes that plaintiff's proposed amendment would be futile in this case. Accordingly, the motion to file an amended complaint will be denied

**3. Conclusion**

In conclusion, plaintiff's motion for reconsideration presents no newly discovered evidence and fails to demonstrate that this court made manifest errors of law in dismissing her case. Her

8

motion to file an amended complaint would be futile. Thus, for the reasons set forth above, plaintiff's motion for reconsideration (Dkt. 5) is **denied** and plaintiff's motion to file an amended complaint (Dkt. 6) is **denied**.

Dated this 15th day of June, 2011.

s/ William C. Griesbach<br>
WILLIAM C. GRIESBACH<br>
United States District Judge